**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ROMAN SILVA,**

                                  **Petitioner,**

                  **- against -**

**DAVID MILLER, Superintendent and**
**Eastern Correctional Facility,**

                                  **Respondent.**

**04 Civ. 8013 (KMK)(LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.**

Petitioner Roman Silva, proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254 to challenge his conviction for Robbery in the First Degree (N.Y. Penal Law § 160.15(3)), Petit Larceny (N.Y. Penal Law § 155.25), and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01(2)).  See Petition (Docket # 2) at 1; Respondent's Record of Exhibits ("Respondent's Ex.") Ex. 1 (Indictment).  On November 4, 1999, Petitioner was sentenced as a second felony offender to a determinate term of imprisonment of thirteen years and a five-year period of post-release supervision for the first degree robbery and to respective one-year terms of imprisonment on the other two counts.  See Docket # 20 (Determinate Sentence Transcript) at 14-15.

Petitioner filed a direct appeal to the New York State Appellate Division, Second Department.  On appeal, Petitioner made four arguments: (1) that the verdict was against the weight of the evidence, (2) that the People failed to prove the elements of the crimes of robbery in the first degree and criminal possession of a weapon in the fourth degree, (3) that Petitioner

was denied his right to the effective assistance of counsel, and (4) that the sentence was excessive and/or illegal.  Respondent's Exs. 10, 11.  On October 4, 2002, the Appellate Division granted Petitioner's application to file a supplemental brief *pro se,* but denied his motion to place the appeal in abeyance pending a determination of his post-judgment motion under N.Y. Crim. Proc. Law § 440.10.  Respondent's Exs. 14, 15.  In his supplemental brief, Petitioner (1) challenged the sufficiency of the evidence before the grand jury, including claims that perjured testimony was presented to the grand jury and that the indictment was amended by the evidence presented at trial, and (2) claimed that he was denied due process when certain comments made by the prosecutor during summation went beyond the scope of the trial court's Sandoval ruling and deprived him of his right to a fair trial.  Respondent's Ex. 16.  The prosecution filed an opposition to Petitioner's supplemental brief.  Respondent's Ex. 17.  The Appellate Division denied Petitioner's application to file a *pro se* supplemental reply brief.  Respondent's Ex. 18.

On June 16, 2003, the Appellate Division, Second Department unanimously affirmed the conviction.  People v. Silva, 760 N.Y.S.2d 876 (N.Y. App. Div. 2003).  Following the Appellate Division's decision upholding Petitioner's conviction, he sought leave to appeal to the New York Court of Appeals.  Respondent's Ex. 21.  On December 3, 2003, the Court of Appeals summarily denied him leave.  People v. Silva,1 N.Y.3d 580 (2003).

At the same time that Petitioner was pursuing a direct appeal, on June 10, 2002, he moved to vacate his judgment pursuant to N.Y. Crim. Proc. Law § 440.10, and on July 3, 2002, he filed a motion to set side his sentence pursuant to N.Y. Crim. Proc. Law § 440.20.  Respondent's Exs. 4, 7.  In his § 440.10 motion, Petitioner asserted four grounds for vacating the judgment:  (1) Petitioner was deprived of his right to due process when the prosecutor withheld

2

Rosario/Brady material, (2) Petitioner was deprived of his right to the effective assistance of trial counsel when counsel failed to prepare for trial and was ill-informed of the facts, (3) Petitioner was deprived of his right to the effective assistance of trial counsel when there was a conflict of interest between the attorney and Petitioner, and (4) Petitioner was deprived of his right to a fair trial when the prosecutor used testimony that he knew to be false.  In his § 440.20 motion, Petitioner challenged his sentence on three grounds:  (1) his sentence was unauthorized since the prosecution's second felony offender statement filed pursuant to N.Y. Crim. Proc. Law § 400.21 failed to set forth the periods of incarceration which would toll the ten-year eligibility period; (2) his sentence was illegally imposed since the prosecution's second felony offender statement failed to comply with N.Y. Crim. Proc. Law § 400.21(3); and (3) his sentence was invalid as a matter of law since Petitioner did not qualify as a second felony offender.  In a Decision and Order dated October 3, 2002, the state court judge denied Petitioner's § 440.10 motion, and in a Decision and Order dated October 7, 2002, he denied Petitioner's § 440.20 motion.  Respondent's Exs. 12, 13.  On April 24, 2003, the Appellate Division denied Petitioner's application for leave to appeal from the denial of his §§ 440.10 and 440.20 motions.  Respondent's Ex. 19.

Petitioner timely filed this petition for a writ of habeas corpus on October 12, 2004.  See Petition (Docket # 2).  The Petition sets forth eight grounds for habeas relief:  (1) the Appellate Division's affirmance of Petitioner's direct appeal was an unreasonable application of clearly established Supreme Court precedent; (2) the Appellate Division's denial of Petitioner's supplemental brief to dismiss the indictment was an unreasonable application of clearly established Supreme Court precedent; (3) Petitioner was denied effective assistance of counsel when his attorneys failed to be informed of the basic facts; (4) Petitioner was denied his due

3

process right to a fair trial when the prosecutor failed to disclose <u>Brady</u> material, thereby limiting

his right to refute the witness testimony against him; (5) Petitioner was denied his due process

right to a fair trial when the prosecutor used testimony he knew or should have known to be

false; (6) Petitioner was deprived of his constitutional right to due process when the People failed

to satisfy the provisions of N.Y. Crim. Proc. Law § 400.21(2) during the sentencing phase; (7)

Petitioner was denied due process when the trial court penalized him for exercising his right to a

jury trial; and (8) the trial court's denial of Petitioner's motion to vacate the judgment was an

unreasonable application of clearly established Supreme Court precedent.  Petition ¶ 12.

For the reasons that follow, I conclude, and I respectfully recommend that Your

Honor should conclude, that the Petition should be denied in its entirety.

## <u>BACKGROUND</u>

The charges brought against Petitioner stem from an incident that occurred on January 18,

1999 at a Sears Roebuck department store located in a mall in Newburgh, New York.

Christopher Griggs and William Babcock, two employees in the Sears loss prevention

department, whose duties included observing various store security cameras that maintained

surveillance of the store sales floor and the stock rooms, were working at the store that afternoon.

Tr. 160-61, 184.[1]  At about 4:40 p.m., Griggs observed Petitioner approach a display model

power washer on the sales floor of the lawn and garden department.  Tr. 161-63.  Petitioner tilted

the power washer back on its wheels, rolled it away from the store display location, and walked

out of the store without paying for it.  Tr. 163-64.

Griggs then contacted Babcock, who was on the Sears sales floor, and described the

_____

[1]"Tr." refers to the trial transcript.  <u>See</u> Docket #'s 19-20.

incident to him.  Tr. 169, 185-86.  Babcock spotted Petitioner and followed him out of the store.

Griggs also followed Petitioner out of the store.  Tr. 169-70, 186-87.  While Griggs stayed back,

Babcock approached Petitioner in the parking lot and asked him where he was going with the

power washer.  Tr. 171, 187-88.  Petitioner claimed that he was going to return the item to the

store.  Tr. 188.  Babcock escorted Petitioner as Petitioner was walking towards the store with the

power washer.  Tr. 188-90, 195.

As Babcock and Petitioner were returning to the Sears store with the power washer,

Petitioner removed a screwdriver from his back pants pocket, and lunged at Babcock with the

pointed end of the screwdriver.  Tr. 189-91, 197-99.  He threatened to kill Babcock.  Tr. 190.

Babcock moved away from Petitioner, at which point Petitioner flung the power washer, and it

fell to the ground.  Tr. 191-92.  Griggs witnessed Petitioner pointing the screwdriver at Babcock

in the Sears parking lot.  Tr. 172-73.  Petitioner fled to his car, but was unable to start the engine,

so he fled the scene on foot.  Tr. 173-74, 192-94.  While this was occurring, Griggs notified mall

security of the incident.  Tr. 174.  Soon after, the Newburgh Police responded to the mall parking

lot.  Tr. 194.  Griggs and Babcock reviewed Sears' security surveillance videotape of the incident

and turned it over to the Newburgh Police.  Tr. 195.  Babcock testified that the store surveillance

videotape only illustrates the events inside the Sears store.  Tr. 186-87.

Newburgh Police Sergeant Scott Manley and Police Officers Dennis Carpenter and

Jeffrey Jones responded to the scene.  Sergeant Manley spoke to Griggs and Babcock, and

Babcock showed him the car that Petitioner had left at the mall parking lot.  Tr. 206, 218.

Officer Jones inspected the vehicle and observed a screwdriver on the passenger side floorboard.

Tr. 219.  He also saw that the car's ignition was missing.  Id.  Officer Jones recovered the

5

screwdriver from the vehicle.  Id.  Newburgh Police Officers stayed with the car in the mall

parking lot to see if the suspect would return.  Tr. 207.  Thereafter, they searched the area for a

couple of hours to see if they could find the suspect.  Id.

 Meanwhile, back at the Newburgh Police Station, Officer Carpenter viewed the Sears

surveillance videotape and was able to identify Petitioner based on the officer's prior contact with

him.  Tr. 204.  Officer Carpenter notified Officer Jones that he recognized Petitioner, and Officer

Jones found out Petitioner's address.  Tr. 223.  Sergeant Manley and Officer Jones, along with a

couple of State Troopers, went to Petitioner's residence in Plattekill, New York.  Tr. 208, 224.

At Petitioner's residence, the officers spoke with a woman who initially identified herself as the

landlord.  Tr. 208.  The woman showed the officers a trailer home located on the property and

said that Petitioner rented it.  Id.  Officer Jones and one of the State Troopers went to look at the

trailer and described it as uninhabitable.  Id.  The woman then identified herself to the police

officers as Petitioner's mother.  Tr. 209.  The Newburgh police officers and the State Troopers

then checked the house but were unable to find Petitioner, so they drove back toward the town.

Id.  As they were driving, they saw a taxi cab approaching the residence.  Tr. 210.  The officers

stopped the cab and looked inside and found Petitioner seated in the back seat.  Tr. 210-11, 224-

25.  Petitioner had with him a white Sears bag, and inside the bag was a sweater that the police

officers identified as identical in appearance to the sweater Petitioner had been wearing in the

Sears surveillance videotape.  Tr. 211 225-27.

 Petitioner testified at trial and admitted that he was present in the Sears store on January

18, 1999.  Tr. 232.  He testified that he was there to purchase tires but that he did not buy any

tires because there were none on sale, so he browsed around the store.  Tr. 233.  Petitioner

noticed that there were no Sears salespeople in his vicinity, so he stole the power washer.  Tr.

233.  He admitted that he was the person in the Sears surveillance videotape.  Tr. 238.

After a three-day trial, on October 7, 1999, the jury returned a verdict convicting

Petitioner on all counts.  Tr. 334-37.  On November 4, 1999, Petitioner was sentenced as a

second felony offender to a determinate term of imprisonment of thirteen years and a five-year

period of post-release supervision for robbery in the first degree and respective one-year terms of

imprisonment for petit larceny and criminal possession of a weapon in the fourth degree.  S. 14-

15.[2]

## DISCUSSION

### Standard of Review

When a state court has decided a claim on the merits, habeas review is governed by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Torres v. Berbary, 340

F.3d 63, 68 (2d Cir. 2003).  AEDPA states that "[a]n application for a writ of habeas corpus on

behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

respect to any claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. §2254(d).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs

_____

[2]"S." refers to the sentencing transcript.  See Docket # 20.

when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Torres, 340 F.3d at 68 (internal quotation marks and citation omitted).  While "it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear.  However, it is well-established in [the Second Circuit] that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Id. at 68-69 (internal quotation marks and citations omitted).[3]

Under the second prong of § 2254(d), the factual findings of state courts are presumed to be correct.  Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

---

[3]Petitioner contends, in three of his claims, that the Court unreasonably applied Supreme Court precedent in his case.  Petitioner does not contend that the state court decisions in his case were "contrary to" clearly established Supreme Court precedent, which requires that " 'the state court arrive[] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " Torres, 340 F.3d at 68 (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).

8

**Petitioner's Claims for Habeas Relief**

Petitioner's petition for writ of habeas corpus contains eight grounds for relief.  For the reasons that follow, none provides a basis upon which relief may be granted in a habeas proceeding.

***Ground 1***

Petitioner claims that the Appellate Division's affirmance of his direct appeal was an unreasonable application of clearly established Supreme Court precedent.  Subsumed within this claim are a number of arguments concerning the evidence presented both during the grand jury proceedings and at trial.

Petitioner first argues that his indictment was somehow unlawfully amended based on alleged discrepancies between the surveillance videotape and the trial testimony.  This claim was included in Petitioner's *pro se* supplemental brief filed on direct appeal, as part of his overall challenge to the sufficiency of the grand jury evidence, which challenge was rejected by the Appellate Division as "not reviewable on appeal."  People v. Silva, 760 N.Y.S.2d 876, 877 (N.Y. App. Div. 2003).  Petitioner also challenges the sufficiency of the evidence upon which his indictment was based on the ground that false testimony was given to the grand jury.  This claim was presented in Petitioner's § 440.10 motion and was rejected by the state court judge as procedurally barred under N.Y. Crim. Proc. Law § 440.10(2)(b), since the claim was appealable and sufficient facts appeared on the record to permit adequate review of the claim on such an appeal.  This claim was also arguably raised on direct appeal in Petitioner's *pro se* supplemental brief as part of his challenge to the sufficiency of the grand jury evidence.  On direct appeal, the Appellate Division rejected any such claims:  "Since the convictions were based on legally

9

sufficient trial evidence, the denial of the defendant's motion to dismiss the indictment based on the alleged insufficiency of the Grand Jury evidence is not reviewable on appeal."  People v. Silva, supra.

In any event, any claims that Petitioner might have concerning the grand jury proceedings are not cognizable in this federal habeas corpus proceeding.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court."); Beverly v. Walker, 899 F. Supp. 900, 908 (N.D.N.Y. 1995) ("[A] petit jury's guilty verdict transforms any defect in the grand jury proceedings into harmless error by establishing both that there was probable cause to indict the defendant and that the defendant was actually guilty beyond a reasonable doubt.") (citing United States v. Mechanik, 475 U.S. 66, 70 (1986)), aff'd, 118 F.3d 900 (2d Cir. 1997); see also May v. Warden, No. 07 Civ. 2176, 2008 WL 4054420, at *8 (S.D.N.Y. Aug. 29, 2008) (claims of perjury before a grand jury are not cognizable in a habeas corpus proceeding).[4]

To the extent that Petitioner might be challenging the sufficiency of the indictment, such a claim is not cognizable on federal habeas review unless it is based on a failure to meet the requirements of due process, i.e., a failure to inform the defendant "in general terms, of the time, place, and essential elements of the crime."  Parrilla v. Goord, No. 02 Civ. 5443, 2005 WL 1422132, at *9 (S.D.N.Y. June 20, 2005) (internal quotation marks and citations omitted); see DeVonish v. Keane, 19 F.3d 107, 108 (2d Cir. 1994) (per curiam) ("An indictment is sufficient

---

[4]In accordance with the Second Circuit's opinion in Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009), the unpublished cases cited herein are attached to Petitioner's copy ***only*** of this Report and Recommendation.

when it charges a crime [1] with sufficient precision to inform the defendant of the charges he

must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution

based on the same set of events.") (internal quotation marks and citations omitted).  The

indictment in this case satisfies the constitutional requirements of due process as it both tracks

the language of the statutes in question – N.Y. Penal Law §160.15(3) ("A person is guilty of

robbery in the first degree when he forcibly steals property and when, in the course of the

commission of the crime or of immediate flight therefrom, he or another participant in the crime .

. . [u]ses or threatens the immediate use of a dangerous instrument."); §155.25 ("A person is

guilty of petit larceny when he steals property."); and § 265.01(2) ("A person is guilty of criminal

possession of a weapon in the fourth degree when . . . [he or she] possesses any dagger,

dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument

or weapon with intent to use the same unlawfully against another.") – and sets forth the time and

place of the alleged crimes.  See Respondent's Ex. 1 (Indictment).

     Petitioner also challenges the weight and sufficiency of the evidence at trial.  However, a

challenge to the weight of the evidence raises no constitutional claim and cannot form the basis

for relief in a federal habeas proceeding.  See Woullard v. Phillips, No. 04 Civ. 2225, 2007 WL

1958971, at *7 (S.D.N.Y. July 6, 2007) ("A challenge to a verdict based on the weight of the

evidence differs from one based on the sufficiency of the evidence: the weight of the evidence

argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5),

whereas a legal sufficiency claim is based on federal due process principles.  It is well-settled that

a weight of the evidence claim is not cognizable on federal habeas review.") (internal quotation

marks and citations omitted), adopted by 2007 WL 2542433 (S.D.N.Y. Sept. 6, 2007).

Therefore, to the extent Petitioner's arguments may be construed as a challenge to the credibility of various witnesses, such arguments go to the weight of the evidence and are not a proper basis for the grant of habeas relief.  See Douglas v. Portuondo, 232 F. Supp. 2d 106, 115-16 (S.D.N.Y. 2002).

With respect to the sufficiency of the evidence, on direct appeal, the Appellate Division ruled that "defendant failed to preserve for appellate review his contentions as to the legal sufficiency of the evidence of his guilt of the crimes of robbery in the first degree and criminal possession of a weapon in the fourth degree."  People v. Silva, 760 N.Y.S.2d 876 (N.Y. App. Div. 2003).[5]  Therefore, not only has this claim been procedurally defaulted in state court,[6] but it has been procedurally defaulted in this Court, and Petitioner has failed to demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  Moreover, despite the fact that the Appellate Division "in any event" addressed the merits of this claim, "[the Second Circuit] has held that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the

_____

[5]Petitioner did not challenge the legal sufficiency of the evidence in support of his conviction on the charge of petit larceny.  This is not surprising, since he admitted at trial that he stole the power washer.  See Tr. 233.

[6]The Court of Appeals denied Petitioner leave to appeal in a summary Decision & Order. See People v. Silva, 1 N.Y.3d 580 (2003).  Therefore, the "last reasoned" court decision expressly found that these claims were procedurally defaulted.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

federal claim.' " Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (internal quotation marks and citations omitted).

Finally, Petitioner contests the admissibility of the surveillance videotape. Petitioner had previously made this argument on direct appeal in his challenge to the weight of the evidence. However, state evidentiary rulings do not rise to a level of a federal constitutional deprivation. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Moreover, under New York law, the establishment of the chain of custody of the surveillance videotape is not a requirement for its admissibility. People v. Patterson, 93 N.Y.2d 80, 84 (1990). There is no basis for finding that the admission of the videotape into evidence was erroneous or unfairly prejudicial to Petitioner in any way – indeed, Petitioner admitted at trial that he was the person shown in the surveillance videotape – and therefore, this ruling does not rise to the level of a constitutional error that would entitle Petitioner to habeas relief. See Alvarez v. Scully, 833 F. Supp. 1000, 1005–06 (S.D.N.Y. 1993) ("An erroneous evidentiary ruling could rise to the level of a constitutional claim cognizable on a habeas petition if it were shown that the error so infected the proceedings as to have rendered a petitioner's trial fundamentally unfair.") (citations omitted); Mitchell v. Smith, 481 F. Supp. 22, 25 (E.D.N.Y. 1979) ("State Court evidentiary rulings normally do not rise to a constitutional level so as to be redressable in a federal habeas corpus proceeding absent a showing that the challenged rulings infringed on one of a petitioner's specific constitutional rights."), aff'd, 633

13

F.2d 1009 (2d Cir. 1980).[7]

### Ground 2

Petitioner contends that the appellate court's rejection of his claim, set forth in his supplemental brief filed on direct appeal, that he was denied due process when the prosecutor violated the trial court's Sandoval ruling concerning the scope of cross-examination about Petitioner's prior criminal conviction, was an unreasonable application of clearly established Supreme Court precedent.  Petitioner argues that the comments made by the prosecutor during summation went beyond the scope of the Sandoval ruling and deprived him of a fair trial.  The Appellate Division held that this claim was "unpreserved for appellate review because the remarks were not objected to at trial."  People v. Silva, 760 N.Y.S.2d 876, 877 (N.Y. App. Div. 2003).  Therefore, this claim has been procedurally defaulted in both state court and this Court, and Petitioner has failed to demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  As explained above, despite the fact that the Appellate Division "in any event" addressed the merits of this claim, federal habeas review is nonetheless foreclosed by the state appellate court's finding of a procedural default.  Glenn v. Bartlett, supra.

### Ground 3

Petitioner claims that he was denied the effective assistance of trial counsel.  He asserts a number of bases for this claim.  First, he argues that his counsel failed to be informed of the basic

---

[7]To the extent that Ground 1 challenges the Appellate Division's decision concerning Petitioner's ineffective assistance of counsel claim on direct appeal, the Court will address it in its discussion of Ground 3, infra.

facts, a claim that was raised in Petitioner's § 440.10 motion.  Included within this assertion are allegations that 1) assigned counsel, who represented Petitioner prior to trial, had done nothing to prepare a defense, which resulted in an inadequate defense at trial, and 2) subsequently retained private counsel, who represented Petitioner at trial, failed to investigate the facts, resulting in a failure to impeach Griggs' testimony at trial.  Relatedly, in his petition papers, as on direct appeal, Petitioner argues that counsel failed to use at trial prior inconsistent statements made by Griggs and Babcock during the grand jury proceedings and that counsel was ineffective for failing to question the chain of custody of the surveillance videotape.[8]  On direct appeal, the Appellate Division summarily rejected Petitioner's claim, stating, "The defendant received the effective assistance of counsel (*see People v. Benevento*, 91 N.Y.2d 708, 674 N.Y.S.2d 629, 697 N.E.2d 584)."  People v. Silva, 760 N.Y.S.2d 876, 877 (N.Y. App. Div. 2003).

Second, Petitioner claims he was deprived of his right to effective assistance of counsel because there was a conflict of interest between him and his attorney due to his inability to pay. This claim, too, was raised in Petitioner's § 440.10 motion.

In deciding the § 440.10 motion, the state court judge concluded as follows:

> Defendant next claims that he was denied the effective assistance of counsel.  He claims that his first attorney was not prepared for trial and that he had a conflict with his second attorney, who was retained.  The conflict he alleges is not a legal conflict.  Instead, it is a problem between the defendant and the law firm he [illegible] over fees and which attorney would represent him at trial.
>
> Many of the claims raised by defendant in this regard, and particularly those for which he attached portions of the trial transcript, are not properly

---

[8]Petitioner had claimed on direct appeal that trial counsel was ineffective for failing to object to an alleged incident of juror misconduct, but he does not include this claim in his habeas petition.

before this Court as part of a CPL § 440.10 application.  Sufficient facts
appear on the record which would permit the defendant to obtain review
by the Appellate Division (CPL § 440.10 [2] [b]).  The remainder of
defendant's arguments are based upon his unsupported allegations and his
motion is denied for that reason (CPL § 440.30 [4] [d] [1]).  It cannot be
overlooked that defendant obtained a new attorney in the middle of
August, 1999, and did not go to trial until October 4, 1999.  There is
absolutely no showing made here that the defendant's first attorney's
conduct caused any problems with his second attorney's ability to represent
him.  Certainly there is nothing to support a finding of ineffective
assistance of counsel based upon the defendant's submission to this Court
(*see People v. Baldi*, 54 NY2d 137 [1981]).

Respondent's Ex. 12 (Decision and Order).[9]

To state a valid claim for ineffective assistance of trial counsel in this habeas proceeding,

Petitioner must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668

(1984), that (1) his attorney's performance fell below an "objective standard of reasonableness,"

id. at 688; and (2) his attorney's deficient performance prejudiced him, i.e., a "reasonable

probability" exists that "but for counsel's unprofessional errors, the result of the proceeding

would have been different."  Id. at 694.  However, "there is no reason for a court deciding an

ineffective assistance claim to approach the inquiry in the same order or even to address both

components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

Thus, any arguments Petitioner makes regarding his original, assigned counsel fail to

establish his ineffective assistance claim.  There is no evidence in the record to show that any

---

[9]Because Petitioner made similar claims regarding his counsel's performance both on
direct appeal and in his § 440.10 motion, rather than rely on the state court judge's finding of a
procedural default in the context of the § 440.10 motion, I will assume that this claim was
adjudicated on the merits in state court and review it under AEDPA's deferential standard, i.e., to
prevail on his claims of ineffective assistance of counsel, Petitioner must establish that the state
court "applied Strickland to the facts of his case in an objectively unreasonable manner."  Cox v.
Donnelly, 387 F.3d 193, 197 (2d Cir. 2004) (quoting Bell v. Cone, 535 U.S. 685, 698-99 (2002)).

alleged errors made by that attorney altered the outcome of the case at trial.[10]

Next, insofar as Petitioner bases his claim of ineffective assistance of counsel on an assertion that his retained counsel failed to inspect the Sears surveillance equipment room, despite the fact that she had moved for, and been granted, an Order to Show Cause to allow her to do so, <u>see</u> Petitioner's Appendix I Exs. E-F, Petitioner fails to provide any basis upon which to find this conduct, if it occurred, deficient.  The only evidence that Petitioner argues would have been gleaned from such an inspection was that counsel – presumably with the assistance of an investigator – could have measured the distance between the surveillance room and the automotive doors, which, he contends, could have been used at trial to prove that Griggs could not have videotaped Petitioner exiting the store and then traveled from the surveillance room to the automotive doors within the eight-second time period shown on the videotape.  But it is far from clear either that the inspection would have yielded such evidence or that this evidence would have been helpful in any way to Petitioner's defense; "speculation satisfies neither <u>Strickland</u>'s deficient performance nor prejudice prongs."  <u>McPherson v. Greiner</u>, No. 02 Civ. 2726, 2003 WL 22405449, at *25 (S.D.N.Y. Oct. 22, 2003) (citations omitted) (in denying ineffective assistance claim, court noted, "McPherson's claims that trial counsel was ineffective for failing to investigate are conclusory and give no indication as to what exculpatory evidence a

---

[10]The only error that the Court is able to discern from the record is an incorrect recitation of facts in the attorney affirmation submitted in support of Petitioner's pre-trial motion to dismiss the indictment and suppress evidence.  In that document, the attorney asserted that the police arrested Petitioner at his residence, and while there, they searched his car, in the course of which search they seized a screwdriver.  <u>See</u> Respondent's Ex. 2.  Nonetheless, while the state court judge denied the pre-trial motion to dismiss the indictment, he ruled that Petitioner would be granted a hearing prior to trial on his applications to suppress admissions and physical evidence, as well as on his motion for a <u>Sandoval</u> hearing.  Respondent's Ex. 3.  Thus, the error in reciting the facts had no impact on Petitioner's defense.

proper investigation would have revealed, or how such evidence would have benefitted McPherson's case.  There is also no way to know that trial counsel did not consider investigating these claims but simply rejected them as being unpromising.").

The bulk of Petitioner's contentions regarding his counsel's performance relate to the failure to impeach witnesses at trial.  However, decisions regarding trial strategy, if not unreasonable, cannot form the basis for an ineffective assistance of counsel claim.  Hence, Petitioner's claims that his trial counsel was ineffective because she failed to elicit minor discrepancies between witnesses' grand jury and trial testimony provide no basis for habeas relief, since decisions about "whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature."  United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987).  Moreover, a number of alleged discrepancies relate to Griggs' and Babcock's testimony regarding their respective locations at various points in time in contrast to what was shown in the videotape admitted into evidence at trial.  However, such discrepancies have little or no relation to the evidence supporting the verdict on the charges of robbery in the first degree and criminal possession of a weapon in the fourth degree, which stem from conduct that occurred outside the Sears store and thus was not captured on the videotape.  In any event, during her summation, Petitioner's counsel did, in fact, point out the inconsistencies between the prosecution witnesses' testimony.  See, e.g., Tr. 264-65 ("That's basically what Mr. Griggs saw. Mr. Babcock on the other hand told us something or participated in something quite different. . . . Ask yourself?  How could two people in the same place see such different things?  Unless maybe someone is fabricating or even embellishing.").

Likewise, counsel's failure to challenge the chain of custody of the surveillance videotape

18

does not amount to ineffective assistance since, as noted above, establishment of the chain of custody was not a requirement for the videotape's admissibility.  People v. Patterson, supra. Moreover, Petitioner admitted at trial that he was the person in the videotape, so his counsel could not have been ineffective for failing to cross-examine the prosecution's witnesses regarding his identification.[11]

With respect to Petitioner's allegation of ineffective assistance of counsel based on the claimed conflict of interest resulting from his inability to pay his attorney's fees, the Second Circuit has stated that "[i]n order to prevail on a conflict of interest claim, the defendant must establish an actual conflict of interest that resulted in 'a lapse of representation.'  Once a defendant demonstrates an actual conflict and a lapse in representation, prejudice is presumed." United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997) (citations omitted).  An actual conflict of interest exists if "during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.' " Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler v. Sullivan, 446 U.S. 335, 356 n.3 (1980)).  However, a failure to pay fees, without more, does not give rise to a conflict of interest. O'Neil, 118 F.3d at 71.  "There is little question that a defendant's failure to pay fees may cause

---

[11]In his petition, Petitioner contends that his counsel was ineffective for failing to use at trial prior inconsistent statements made by Officer Carpenter during the grand jury proceedings, as well as in the police report signed by Officers Carpenter and Jones, regarding Carpenter's identification of Petitioner from a still photo, as opposed to Carpenter's trial testimony that he identified Petitioner from viewing the surveillance videotape shown to the jury at trial.  This claim was not raised either on direct appeal or in Petitioner's § 440.10 motion and thus it was not exhausted by presenting it to the state court.  Regardless, it is without merit since, as explained above, decisions regarding the manner of cross-examination cannot form the basis for an ineffective assistance of counsel claim, nor can Petitioner claim prejudice since his identification was undisputed.

some divisiveness between attorney and client, but we presume that counsel will continue to execute his [or her] professional and ethical duty to zealously represent his [or her] client, notwithstanding the fee dispute.  To the extent that the attorney shirks his [or her] ethical obligation to dutifully represent his [or her] client as a result of a fee dispute, we believe Strickland provides the appropriate analytic framework."  Id. at 71-72 (citations omitted). Therefore, to the extent there was a fee dispute between Petitioner and his attorney,[12] such dispute alone does not establish that Petitioner was denied the effective assistance of counsel based on a conflict of interest.  Furthermore, while Petitioner seeks a hearing to develop the factual record regarding this claim, Traverse (Docket # 11) at 18-19, no such hearing is required since the existence of a fee dispute, without more, does not constitute a conflict of interest.  See O'Neil, 118 F.3d at 72 (Second Circuit held that district court had no duty to conduct an inquiry into the existence of a conflict of interest when all that had been presented to it was a motion by counsel to withdraw for non-payment of fees).

In sum, the alleged deficiencies in trial counsel's performance cited by Petitioner neither rendered counsel's performance objectively unreasonable, nor did they prejudice Petitioner. Therefore, he cannot claim that he was denied effective assistance of counsel, and this cannot provide a basis for habeas relief.

***Ground 4***

---

[12]It does not appear that there was an actual fee dispute between Petitioner and his attorney.  Rather, it appears that his inability to pay the fees requested by the attorney he originally retained resulted in the assignment of a different attorney from the same law firm to Petitioner's case.  See Respondent's Ex. 4 (Affidavit in Support of § 440.10 Motion) at 9-10. Petitioner claims that because of his inability to pay, this different attorney provided him inadequate representation.  However, as explained herein, there is nothing in the record to substantiate this claim.

Petitioner claims that he was denied his due process right to a fair trial when the prosecutor failed to disclose <u>Brady</u> material, resulting in the limitation of his right to refute the witnesses' testimony against him.  In particular, Petitioner claims that the prosecution did not turn over to defense counsel the first page of a police complaint report, Petitioner's Appendix I Ex. D, as well as a copy of a document entitled, "Permission of Authority Property."  Petitioner's Appendix I Ex. P.  Petitioner first asserted this claim in his § 440.10 motion as both a violation of <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961), and a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  <u>See</u> Respondent's Ex. 4.  The state court judge rejected the claim because the "only basis for defendant's claim in this regard is his unsupported allegations contained in is [sic] own affidavit."  Respondent's Ex. 12 (Decision and Order).  In his memorandum of law in support of his petition, Petitioner includes in this claim the additional assertion that while his attorneys were given a typewritten version of a Notice to Defendant of Intention to Offer Evidence Pursuant to CPL § 710.30, which stated that "defendant was identified from a video tape of the crime," <u>see</u> Petitioner's Appendix I Ex. J, they were not given a handwritten version of this document, which stated that "upon viewing a picture from Sears security camera's [sic] the subject was recognized."  <u>See</u> Petitioner's Appendix I Ex. I.

As an initial matter, "the failure to turn over <u>Rosario</u> material is not a basis for habeas relief, as the <u>Rosario</u> rule is purely one of state law."  <u>Martinez v. Phillips</u>, No. 04 Civ. 8617, 2009 WL 1108515, at *23 (S.D.N.Y. Apr. 24, 2009) (citations omitted).  However, in his habeas petition, Petitioner contends only that this conduct constituted a <u>Brady</u> violation.  "Under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) and its progeny, the government must disclose evidence in its possession that is favorable to a defendant where the evidence is material either to guilt or to

punishment.  Evidence is 'favorable' if it tends to exculpate the defendant, see id. at 89, or if it impeaches the credibility of a government witness."  Id.  "There are three essential components to a Brady violation: 1) that the evidence at issue was favorable to the accused, either because it is exculpatory or because it is impeaching; 2) that the evidence must have been suppressed by the Government, either willfully or inadvertently; and 3) that the defendant suffered prejudice as a result.  In determining whether the suppressed evidence caused prejudice to Petitioner, the relevant query asks whether 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' "  Id. (citations omitted).

Here, with respect to the first page of the police complaint report and the "Permission of Authority Property," it is not clear that this evidence was favorable to Petitioner insofar as these documents do not contain exculpatory information, nor do they contain inconsistencies that could be used to impeach a witness' credibility.  Indeed, the only additional information provided by these documents is the fact that Petitioner allegedly stole some tools in addition to the power washer.  Moreover, it is unclear that this evidence was, in fact, suppressed by the prosecution. The prosecution stated that it did provide these documents to Petitioner's counsel, and there are no statements from Petitioner's counsel to the contrary (although Petitioner claims he sought to obtain such statements).  Petitioner takes issue with the state court's decision on his § 440.10 motion insofar as he claims that he tried, unsuccessfully, to provide affidavits from his attorneys concerning the withholding of Rosario/Brady material.  See Petitioner's Appendix I Exs. Q-T. However, the lack of affidavits from Petitioner's attorneys is of no moment since there is no indication that, even if this evidence had been suppressed, Petitioner suffered prejudice as a

22

result, i.e., that it would have changed the outcome of the trial, since theft of those tools was not part of the charges against him.

With respect to the handwritten version of the Notice to Defendant of Intention to Offer Evidence Pursuant to CPL § 710.30, Petitioner did not include suppression of this document in his previously asserted Rosario/Brady claim.  Nonetheless, such claim is without merit, since, as with the other documents, this document does not contain exculpatory information, nor does it contain inconsistencies that could be used to impeach a witness' credibility.  Petitioner seems to make much of the fact that the typewritten version of this document refers to a videotape, while the handwritten version refers to a picture from the Sears security camera, and asserts, without any evidentiary support, that the picture was not an image taken from the videotape.  See Petitioner's Mem. of Law (Docket # 3) at 55 ("Especially where the surveillance videotape testified to as being recorded by Griggs and secured as evidence by Officer Jones from which he made the still photo that was testified to by Officer Carpenter as being the still photo he used to identify petitioner from, is not shown on the people's exhibit '6' the surveillance videotape, which was shown to the jury.").  However, even if this document had been suppressed, there is no indication that Petitioner suffered any resulting prejudice since he did not contest his identification at trial.

Therefore, this ground cannot form the basis for habeas relief.

**Ground 5**

Petitioner asserts in his petition that he was denied his due process right to a fair trial when the prosecutor used false testimony.  Specifically, Petitioner claims that the trial testimony of the two Sears employees was inconsistent with their prior grand jury testimony.  This claim

23

was raised by Petitioner in his § 440.10 motion, and it was denied by the state court judge as procedurally barred under N.Y. Crim. Proc. Law § 440.10(2)(b), since the claim was appealable and sufficient facts appeared on the record to permit adequate review of the claim on such an appeal. However, Petitioner never raised this claim on direct appeal and, to the extent it was subsumed within his challenge to the sufficiency of the evidence on direct appeal, the Appellate Division deemed that claim procedurally defaulted as well. People v. Silva, supra. Therefore, this claim has been procedurally defaulted in both state court and this Court, and Petitioner has failed to demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

### Ground 6

Petitioner claims that he was denied due process when the prosecution failed to comply with the provisions of N.Y. Crim. Proc. Law § 400.21, which sets forth the procedure to be followed in determining whether a defendant is a second felony offender for sentencing purposes. This claim was raised in Petitioner's § 440.20 motion to set aside his sentence. However, "[t]o the extent that [Petitioner] claims that the court failed to follow the procedures set forth in C.P.L. § 400.21 for sentencing second felony offenders, he alleges violations of state statutory law which are not cognizable on habeas review." Curtis v. Fischer, 387 F. Supp. 2d 218, 225 (W.D.N.Y. 2005) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Consequently, this ground cannot form the basis for habeas relief.

### Ground 7

Petitioner claims that he was denied due process when the court penalized him for

24

exercising his right to a trial by jury and not accepting a plea bargain offered by the prosecution (although there is no evidence in the record of any proposed plea bargain).  While Petitioner argued on direct appeal that his sentence was excessive (although he did not base such claim on constitutional grounds, nor did he argue that it was outside the range permitted by law) and argued in his § 440.20 motion that his sentence should be set aside since it was based on an improper determination that he was a second felony offender, this particular claim was not raised by Petitioner either on direct appeal or in his § 440.20 motion.  As a result, this claim is unexhausted.  Nonetheless, it may be dismissed on the merits.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  "When a sentence imposed at the conclusion of a trial is greater than the sentence a prosecutor had been willing to recommend as part of a plea offer, the disparity does not, without more, establish vindictiveness." Bailey v. Ercole, No. 06 Civ. 5811, 2007 WL 4707738, at *13 (S.D.N.Y. Aug. 17, 2007) (citations omitted) (claim that sentencing court committed constitutional error in imposing a sentence after trial that was more than double the prosecutor's plea offer could not form the basis for habeas relief).  There is nothing in the record of the sentencing proceeding to indicate that the judge based his decision on Petitioner's failure to accept a plea deal.  See Docket # 20 (Determinate Sentence Transcript).  Therefore, this ground cannot form the basis for habeas relief.

*Ground 8*

Petitioner once again challenges the effectiveness of his trial counsel, this time in the guise of claiming that the state court wrongly denied the ineffectiveness claim asserted in his § 440.10 motion on the ground that Petitioner could have raised these arguments on direct appeal. Petitioner cites the Supreme Court decision of Massaro v. United States, 538 U.S. 500 (2003) for the proposition that ineffective assistance of counsel claims may be brought in a collateral proceeding regardless of whether they may have been raised on direct appeal.  "However, the Second Circuit has stated that 'Massaro is not a constitutional decision, and by its own language it did not extend its rule beyond § 2255.'  Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir.2003)." Williams v. Artus, No. 05-CV-2479, 2006 WL 3694549, at *7 (E.D.N.Y. Dec. 13, 2006). Therefore, to the extent that the state court judge found that Petitioner procedurally defaulted his ineffective assistance of counsel claim, Petitioner does not allege, nor can he establish, either cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default. Coleman v. Thompson, supra.  In any event, for the reasons set forth in the discussion of Ground 3, Petitioner's ineffective assistance of counsel claim fails on the merits.  Consequently, this ground cannot form the basis for habeas relief.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed in its entirety.  As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further

conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C.

§1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v.

United States, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall

have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of

thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written

objections to this Report and Recommendation.  Such objections, if any, shall be filed with the

Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M.

Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601,

and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas and

should not be made to the undersigned.

Dated: June 7, 2009
       White Plains, New York

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

Copies of the foregoing Report & Recommendation have been sent to the following:

27

The Honorable Kenneth M. Karas

Roman Silva
DIN # 00-A-0168
Wallkill Correctional Facility
Box G
Wallkill, New York 12589-0286

Andrew R. Kass, Esq.
Office of the Orange County District Attorney
Orange County Government Center
Goshen, New York 10924-1627